**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOM MILLIKEN, derivatively on behalf of HOSPITALITY INVESTORS TRUST, INC., | **No. 18-CV-1757 (VEC)** |
| Plaintiff, | |
| v. | |
| AMERICAN REALTY CAPITAL HOSPITALITY ADVISORS, LLC, AMERICAN REALTY CAPITAL HOSPITALITY PROPERTIES, LLC, AMERICAN REALTY CAPITAL HOSPITALITY GRACE PORTFOLIO, LLC, AR CAPITAL, LLC, AR GLOBAL INVESTMENTS, LLC, NICHOLAS S. SCHORSCH, WILLIAM M. KAHANE, PETER M. BUDKO, EDWARD M. WEIL, BRIAN S. BLOCK, JONATHAN P. MEHLMAN, EDWARD T. HOGANSON, STANLEY R. PERLA, ABBY M. WENZEL, AND ROBERT H. BURNS, | |
| Defendants, | |
| -and- | |
| HOSPITALITY INVESTORS TRUST, INC., | |
| Nominal Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT
AND APPROVAL OF NOTICE**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................1

II. HISTORY OF THE LITIGATION .......................................................................3

    A.    Factual Background and Summary of Claims ....................................................3

    B.    Plaintiff's Pre-Suit Efforts .................................................................................5

    C.    The SLC Investigation, Conclusions and Partial Motion to Dismiss ...............6

    D.    Summary of Defenses Raised by the AR Defendants ....................................10

    E.    The SLC's Settlement Discussions with Mehlman ........................................11

    F.    Plaintiff's Settlement Discussions with the Stipulating Defendants................11

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...............12

    A.    The Standards for Preliminary Approval of a Derivative Settlement..............13

    B.    The Proposed Settlement Serves the Interests of HIT and Its Stockholders....14

    C.    The Proposed Settlement is the Result of Intense, Lengthy, Arm's-
           Length Negotiations by Informed and Experienced Counsel .........................17

    D.    The Opinions of the SLC and Company..........................................................19

    E.    Plaintiff and Plaintiff's Counsel Will Make a Petition
           For a Reasonable Fee Award ...........................................................................19

IV. THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE ............................20

V. PROPOSED SCHEDULE OF EVENTS ....................................................................21

VI. CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re American International Group, Inc.*,
965 A.2d 763 (Del. Ch. 2009)...................................................................................9

*In re AOL Time Warner S'holder Derivative Litig.*,
2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sep. 6, 2006)......................................2, 15

*Struogo ex rel. Brazilian Equity Fund, Inc., v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................17

*City of Providence v. Aeropostale, Inc.*,
2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014)...................................17, 20

*City of St. Clair Shores General Employees Retirement System v. Inland Western
Retail Real Estate Trust, Inc., et al.*,
Case 07 C 6174 (U.S.D.C. N.D. Ill) ........................................................................18

*Clark v. Ecolab Inc.*,
2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010)........................................14

*CNL Hotels & Resorts Inc. Federal Securities Litigation*,
Case No. 04-cv-1231 (U.S.D.C. M.D. Fla.)............................................................18

*In re Comverse Tech., Inc. Derivative Litig.*,
06 Civ. 1849, slip op. (E.D.N.Y. Apr. 2, 2010) ......................................................21

*In re Empire State Realty Trust, Inc. Investor Litig.*,
Case 650607/2012...................................................................................................18

*Gamburg, et al., v. Hines Real Estate Investment Trust, Inc., et al*,
Case No. 24C16004496 (Cir. Ct. Baltimore City, MD) .........................................18

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................2

*Kaplan v. Peat, Marwick, Mitchell & Co.*,
550 A.2d 726 (Del. 1988) .........................................................................................9

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ...................................................................................15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ....................................17

*In re Marvell Tech. Group Ltd. Derivative Litig.*,
   No. C-06-3894-RMW, slip op. (N.D. Cal. May 21, 2009) .....................................21

*Melito v. Am. Eagle Outfitters, Inc.*,
   2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017) ......................................20

*In re Metro Life. Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) .......................................................................21

*In re Nasdaq Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................14

*In re NVIDIA Corp. Derivative Litig.*,
   2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008) ...................................14

*In re Oracle Corp. Derivative Litig.*,
   2019 Del. Ch. LEXIS 1381 (December 4, 2019) .....................................................9

*In re Rambus Inc. Derivative Litig.*,
   2009 U.S. Dist LEXIS 131845 (N.D. Cal. Jan. 20, 2009) .....................................20

*In re Sanchez Energy Derivative Litigation*,
   C.A. No. 9132-VCG (Del. Ch.) .............................................................................18

*In re State Street Bank & Trust Co. ERISA Litig.*,
   2009 U.S. Dist. LEXIS 100971 (S.D.N.Y. Oct. 28, 2009) ...................................14

*Stuart Wollman v. Hospitality Investors Trust, Inc.*,
   Civil Action No. 1:20-cv-00798 (S.D.N.Y.) ...........................................................6

*In re Telik Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................17

**RULES**

Federal Rule of Civil Procedure Rule 23.1 ........................................................... *passim*

**OTHER**

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 22.110 (4th
   ed. 2002) ..............................................................................................................13

7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
   PRACTICE AND PROCEDURE, CIVIL 3D § 1839, at 199 (2007)...................................13

2 Ralph C. Ferrara, Kevin T. Abikoff, and Laura Leedy Gansler, *Shareholder Derivative Litigation: Besieging the Board* § 7.03 (2019) ......................................................9

Plaintiff Tom Milliken ("Plaintiff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Notice ("Motion") pursuant to Federal Rule of Civil Procedure Rule 23.1.

## I.      PRELIMINARY STATEMENT

Plaintiff seeks preliminary approval of the proposed Settlement[1] that would resolve the Derivative Action in its entirety.  The Settlement, achieved after months-long, hard-fought, arm's-length negotiations by informed and experienced counsel including with the assistance of a third-party mediator, is comprised of: the settlement terms that the Special Litigation Committee ("SLC") negotiated with Defendant Jonathan P. Mehlman (the Company's chief executive officer) ("Mehlman"); and, the settlement terms that Plaintiff negotiated with all other Defendants to the Derivative Action ("Stipulating Defendants" and together with Mehlman, the "Defendants").  The terms of the Settlement are set forth in the Stipulation (Exhibit 1, hereto) entered into among: Plaintiff; the SLC; nominal Defendant HIT; and each Defendant to the Derivative Action.

The proposed Settlement provides substantial economic benefits to HIT and confers a material benefit upon HIT and HIT's current stockholders.  Pursuant to the Settlement, HIT will receive cash settlement payments of $15,181,108.47 in the aggregate. In addition, the Settlement requires certain Defendants to tender to HIT an aggregate of 83,504 shares of Company common stock[2].

---

[1] Unless otherwise stated, all capitalized terms herein are as defined in the Stipulation, which is attached as Exhibit 1 to the Declaration of Kimberly Donaldson-Smith ("KDS Decl.") filed herewith.

[2] The most recently published estimated net asset value of the Company's stock as of December 31, 2018 is $9.21 per share.

Federal Rule of Civil Procedure 23.1(c) provides that a derivative action may be settled only with the Court's approval. Approval of the proposed Settlement is a two-step process that must begin with preliminary approval of the Settlement before the Court considers final approval of the Settlement. *See e.g.. In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *5-6 (S.D.N.Y. Sep. 6, 2006). During this first step, the questions before the Court are: (1) whether the proposed Settlement is within the range of possible approval so that notice of the Settlement may be provided to HIT's stockholders; and (2) whether the proposed forms of notice to HIT stockholders – the Notice and Summary Notice attached as Exhibits C and D to the Stipulation – and the proposed procedure for disseminating notice to stockholders, satisfy the requirements of Rule 23.1. *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87, 93-94 (S.D.N.Y. 2007).

The Court should grant preliminary approval of the proposed Settlement because it falls squarely within the range of possible approval, provides for a substantial monetary recovery for the Company, and is the product of intense and lengthy arm's-length negotiations by informed and experienced counsel. Further, the proposed Settlement was reached after significant proceedings which included, *inter alia*: extensive pre-suit efforts by Plaintiff between July 2017 and February 2018 including Plaintiff Counsel's extensive investigation of the Company's public Securities and Exchange Commission ("SEC") filings, meetings with the Company's counsel, and review of non-public Company documents provided by the Company; the preparation and filing of a comprehensive complaint; the SLC's investigation between May 2018 and October 2019, and the issuance of the SLC Report; the SLC's extensive settlement discussions with Mehlman between April 2019 and June 2019; and, Plaintiff's extensive settlement discussions with the Stipulating

Defendants[3] between June 2019 and December 2019, which included the exchange of detailed mediation papers and  in-person and telephonic mediation sessions with two JAMS mediators. Also, the proposed forms of notice of the Settlement, which provide important information about the Settlement, will be filed with the SEC, posted on HIT's Investor Relations webpage, and published in *Business Wire,* satisfy the requirements of Rule 23.1 and due process.

Plaintiff, therefore, respectfully requests that the Court enter the Proposed Preliminary Approval Order (Exhibit A to the KDS Decl), which provides for: (i) preliminary approval of the Settlement; (ii) approval of the Notice and Summary Notice to stockholders of HIT and the procedures for their dissemination; and (iii) a schedule leading up to the final Settlement Hearing at which the Court will consider whether the proposed Settlement should receive final approval, and whether the application that Plaintiff and Plaintiff's Counsel will make for attorneys' fees, litigation expenses, and a contribution award ("Fee Application"), should receive approval.

## II.    HISTORY OF THE LITIGATION

### A.    Factual Background and Summary of Claims

HIT is a Maryland-incorporated, non-traded real estate investment trust ("REIT") that was sponsored and managed by entities owned by Defendant AR Capital, LLC and/or its successor, Defendant AR Global Investments, LLC (collectively "AR Capital").  Beginning at least in late 2014, it publicly came to light that AR Capital, its principals and affiliates, as well as the numerous REITs and other investment entities that AR Capital affiliates sponsored and/or provided management services for, became engulfed in various scandals, including that American Realty

---

[3] "Stipulating Defendants" are: American Realty Capital Hospitality Advisors, LLC, American Realty Capital Hospitality Properties, LLC, American Realty Capital Hospitality Grace Portfolio, LLC, AR Capital, LLC, AR Global Investments, LLC, Nicholas S. Schorsch, William M. Kahane, Peter M. Budko, Edward M. Weil, Brian S. Block, Stanley R. Perla, Abby M. Wenzel, Robert H. Burns, and Edward T. Hoganson.

Capital Properties, Inc. (a REIT sponsored and managed by AR Capital affiliates) had misstated its financial performance in its SEC filings.  Consequently, the Board was forced to suspend HIT's securities offering in November 2015.  HIT experienced severe financial difficulties as a result of the suspension (and then termination) of its offering which left it unable to satisfy the financial commitments that HIT's Board had caused the Company to make in the preceding months.  The Company was forced to obtain recapitalization financing in 2017 (the "2017 recapitalization"). The crux of the Derivative Action is that between November 2015 and March 2017, AR Capital and its affiliates, with the assistance and concurrence of the Directors and officers of the Company, executed a series of transactions through which AR Capital affiliates, including the Company's advisor, American Realty Capital Hospitality Advisors, LLC ("Advisor") and the Company's property managers American Realty Capital Hospitality Properties, LLC and American Realty Capital Hospitality Grace Portfolio, LLC ("Property Managers"), unlawfully extracted value from the Company.

The claims asserted in the Derivative Action primarily relate to the harm caused to HIT (and derivatively its shareholders) as a result of: (1) the November 11, 2015 amendment to the advisory agreement between HIT and the Advisor ("Advisory Agreement") pursuant to which HIT would make payments of asset management fees to the Advisor in the form of cash rather than in the form of subordinated participation interests in the Company's operating partnership that would result in value only if the Company met a performance threshold; (2) HIT's allegedly uncompetitive property management arrangements, from the Company's inception until the 2017 recapitalization, which resulted in HIT's alleged overpayment of fees to the Property Managers; and (3) HIT's entry into the "Framework Agreement" on January 13, 2017 pursuant to which HIT made payments of compensation to the Advisor and Property Managers in consideration for the

restructuring of the alleged uncompetitive property management arrangements, and as part of the 2017 recapitalization.

### B.    Plaintiff's Pre-Suit Efforts

On July 14, 2017, Plaintiff (a HIT stockholder) sent a demand letter to the HIT Board demanding that the Board investigate and take action to remedy alleged breaches of fiduciary duty related to: (1) the November 2014 amendment to the Advisory Agreement and the Company's subsequent payment of cash asset management fees; and (2) the Company's payment of cash and stock compensation in connection with the internalization of the Company's management function pursuant to the Framework Agreement ("July 2017 Demand").

Between August 2017 and December 2017, Plaintiff's Counsel had meetings and other communications with the Company's counsel relating to the July 2017 Demand, including in-person meetings in New York City on August 8, 2017 and on December 9, 2017. Plaintiff's Counsel also reviewed non-public documents relating to the July 2017 Demand produced to them pursuant to a non-disclosure agreement.

On December 12, 2017, Plaintiff sent a second demand letter, addressed to the Company's counsel, demanding that the Board investigate and take action to remedy alleged breaches of fiduciary duty related to the Company's property management arrangements with the Property Managers, affiliates of the Advisor and AR Capital, which Plaintiff contended were uncompetitive and therefore improper ("December 2017 Demand").

Plaintiff initiated the Derivative Action on February 26, 2018.[4]

---

[4] After the filing of the Derivative Action, Dr. Stuart Wollman ("Wollman"), a HIT stockholder sent a demand letter to the Board on March 15, 2018 ("Wollman Demand Letter") that generally restated the claims set forth in Plaintiff's derivative complaint and in Plaintiff's July 2017 Demand, which was attached to Plaintiff's complaint. On July 9, 2019, Wollman, seeking to end-run the proceedings in the Derivative Action, filed a petition in the Supreme Court of the State of New

### C.        The SLC Investigation, Conclusions and Partial Motion to Dismiss

On March 21, 2018 and May 1, 2018, the Board adopted resolutions forming the SLC, which was vested with the authority to investigate the allegations made in connection with Plaintiff's July 2017 Demand and December 2017 Demand, the Derivative Action, and the Wollman Demand Letter, and to evaluate whether the Company should allow the claims asserted in the Derivative Action to proceed, to prepare any reports, and take such other actions that the SLC deemed appropriate in its sole authority.  The SLC is comprised of two of the Company's independent directors, Stephen P. Joyce and Edward A. Glickman.  Although opposed by Plaintiff, on August 7, 2018, the Court entered an order saying the Derivative Action pending the SLC's investigation.

Between May 2018 and October 2019, the SLC with the assistance of independent counsel, conducted its investigation which included collecting and reviewing documents from the Company (700 gigabytes of electronic data) and conducting 19 separate interviews with 10 individuals.

---

York demanding documents relating to the SLC and its investigation, which petition was denied without prejudice on July 26, 2019. Wollman's counsel was provided a copy of the SLC Report on October 12, 2019, when it was filed with the Court by the SLC.  Then, just two days before the Court-ordered deadline of January 31, 2020 for the filing of the Stipulation and this Motion, Wollman filed the action captioned in *Stuart Wollman v. Hospitality Investors Trust, Inc.,* Civil Action No. 1:20-cv-00798 (S.D.N.Y.) ("Wollman Complaint"). Wollman designated the Wollman Complaint as related to the Derivative Action on January 30, 2020.  The Wollman Complaint fails to allege any distinct injury separate from any harm suffered by HIT and constitutes an improper attempt to convert derivative claims into direct claims. The Stipulation provides that a condition precedent to the Effective Date of the Settlement is the Court's dismissal with prejudice of the Wollman Complaint. In all other respects, the Parties will proceed with all other steps contemplated by this Stipulation to secure final approval of this Settlement.  The defendants named in the Wollman Complaint intend to seek an expedited judicial determination dismissing the Wollman Complaint with prejudice, as well as other appropriate relief. Among other reasons for dismissal of this calculated filing, the Wollman Complaint, despite being asserted as a "class" case, asserts derivative claims that would be released pursuant to the Settlement, and, notably, the same derivative claims that Wollman had demanded that the Board take action with respect to in March 2018.

On April 16, 2019, the Company announced that: (1) the SLC had determined it appropriate for the Company to pursue certain claims asserted in the Derivative Action against Defendants Schorsch, Kahane, Budko, Weil, Block, the Advisor, the Property Managers, and AR Capital, and not pursue other claims; (2) that the SLC and Mehlman (the current CEO of the Company) had reached a settlement-in-principle subject to signing a definitive settlement agreement and Court approval; and (3) the SLC had determined that it was not appropriate to pursue claims against Defendant Hoganson, the Company's former chief financial officer, or against the Independent Director Defendants (i.e., Defendants Perla, Wenzel, and Burns).  On October 11, 2019, the SLC issued its 147-page report ("SLC Report") and submitted it to the Court.

The SLC's determination that the claims against Defendant Hoganson and the Independent Director Defendants should not proceed was based on a number of factors including but not limited to the SLC's conclusion that the Company's Charter prohibits the Company from recovering money from Company officers or Directors, unless the officer or Director received an improper benefit or engaged in active dishonesty.  In determining whether claims against the Independent Director Defendants should proceed, the SLC also considered the information available to the Independent Director Defendants and certain actions taken by them.   Plaintiff disputed the SLC's conclusion that the Company's Charter prohibits the Company from recovering money damages from Hoganson and the Independent Director Defendants under the circumstances and continued to press claims against them throughout the settlement process.

In determining which claims against the AR Defendants (i.e., the Advisor, Property Managers, AR Capital, Schorsch, Kahane, Budko, Weil, and Block) should proceed, the SLC took into consideration the Mutual Waiver and Release, dated as of March 31, 2017 ("Mutual Release") which was entered into in connection with the Company's 2017 recapitalization.  Pursuant to the

Mutual Release, the Company released all claims against the "Advisor Parties" (which included the AR Entity Defendants) and "each of their respective members, partners, equity holders, Affiliates and Representatives, in each case in each of their capacities as such, and the respective predecessors, successors and assigns of the foregoing." The SLC determined that the Mutual Release specifically excluded the Framework Agreement.

The SLC determined that the Company's claims against the AR Defendants and Mehlman arising under the Framework Agreement and relating to the Company's payment of compensation to the Advisor and Property Manages pursuant to the Framework Agreement, should be permitted to proceed. In addition, the SLC determined that certain of the Company's claims against Defendants Schorsch and Kahane, arising prior to the Framework Agreement, related to their actions as officers and/or Directors of the Company, rather than as "members, partners, and equity holders" of the "Advisor Parties." The SLC determined that these claims are not covered by the Mutual Release and therefore should be permitted to proceed.

The SLC, however, determined that the Mutual Release presented a challenge with respect to the Company's claims against the AR Entity Defendants arising prior to the Framework Agreement. It also concluded that the Company's claims against certain of the AR Individual Defendants, specifically Weil, Budko, and Block, related to their actions as officers and directors of the AR Entity Defendants and were therefore purportedly released pursuant to the Mutual Release. Since the AR Defendants did not participate in the SLC's investigation, the SLC determined that it lacked information to fully assess whether grounds might exist for the Court to void the Mutual Release. Accordingly, the SLC concluded that the Company should "reserve rights to void the Mutual Release," depending upon facts that might come to light in discovery, but that claims purportedly released by the Mutual Release should not proceed at the time.

On December 20, 2019, the SLC filed its Partial Motion to Dismiss[5] through which the SLC represented to the Court that the best interests of the Company would be served by permitting Plaintiff to "further amend the Complaint and proceed with the Milliken Action in accordance with the [SLC's] conclusions."

The SLC's determination that certain claims should be permitted to proceed is noteworthy: special litigation committees rarely side against defendants. *See* 2 Ralph C. Ferrara, Kevin T. Abikoff, and Laura Leedy Gansler, *Shareholder Derivative Litigation: Besieging the Board* § 7.03 (2019) ("[T]he prevailing view among scholars and practitioners within the corporate law field is that special litigation committees side with the defendants in an overwhelming number of cases in which they are employed.")  It is also particularly noteworthy that the SLC ultimately determined that Plaintiff and Plaintiff's Counsel, rather than other law firms retained directly by the Company, should prosecute them.  *See In re Oracle Corp. Derivative Litig.*, 2019 Del. Ch. LEXIS 1381, at *2, *47 n. 246 (December 4, 2019) (describing the instances in which  special litigation committees determine that the derivative plaintiff should pursue the claims as among equity's "rarae aves and chimeras" and noting that the court's research uncovered only two other actions with a similar course of events: *In re American International Group, Inc.*, 965 A.2d 763 (Del. Ch. 2009) and *Kaplan v. Peat, Marwick, Mitchell & Co.*, 550 A.2d  726 (Del. 1988)).

The SLC's determination that certain claims should proceed and that the Company's interests would be best served by permitting Plaintiff to prosecute them underscores Plaintiff Counsel's diligent pursuit of the Company's claims.

---

[5] On January 2, 2020, the Court denied without prejudice the SLC's Partial Motion to Dismiss as withdrawn (Dkt. #124).

### D.      Summary of Defenses Raised by the AR Defendants

The AR Defendants contend that the Mutual Release contains broad mutual releases, barring all claims asserted against them in the Derivative Action.  They further argue: (i) that there is no cognizable basis to void the Mutual Release; (ii) that the contention that the Framework Agreement claims were not released is incorrect, because the carve-out provision in the Mutual Release for claims arising under the Framework Agreement is extremely narrow and only applies to disputes concerning future obligations under the Framework Agreement, and not the claims asserted in the Derivative Action; and (iii) that the contention that the Mutual Release does not cover Defendants Schorsch and Kahane because they were allegedly acting in their capacity as officers of HIT is incorrect, because with respect to all claims asserted in the Derivative Action against Schorsch and Kahane, they were acting in their capacities as officers and directors of AR Capital and its affiliates.

The AR Defendants assert additional defenses including, but not limited to: (i) that breach of fiduciary duty claims are not recognized under Maryland law, and Plaintiff failed to plead allegations of active and deliberate dishonesty or improper benefit as required to establish director liability under Maryland law; (ii) that Plaintiff failed to articulate why any of the AR Defendants, who functioned as external managers, owed any duties to HIT with respect to the transactions at issue in the case; (iii) that under Maryland law, an interested director cannot be liable for a related party transaction when his or her interest is disclosed and the transaction is approved by disinterested directors, which is the case for each of the transactions at issue; (iv) that all claims relating to the allegedly improper property management arrangements are time-barred, pursuant to the applicable three-year statute of limitations; (v) that the allegedly improper property management agreements entered into with the Property Managers were market standard; (vi) that

the Company failed to invoke the notice and cure provisions under the property management agreements; (vii) that the Company cannot show any damages associated with the change in the form of the Advisor's payment; (viii) that the Company's Charter explicitly permits amendments to the Advisory Agreement and places no restriction on the form of compensation that the Company may pay; and (ix) that the Framework Agreement cannot be the basis for a breach of fiduciary or other claim because it was the product of extensive and rigorous negotiations by sophisticated parties represented by counsel, and HIT's Independent Directors, who approved the transaction, had unfettered access to all relevant documents and personnel and ample opportunity to conduct extensive due diligence.

### E.      The SLC's Settlement Discussions with Mehlman

In or around April 2019, counsel for the SLC and Mehlman engaged in numerous in-person and telephonic settlement discussions concerning a potential resolution of the claims against Mehlman asserted in the Derivative Action.  During these discussions, counsel for the SLC and Mehlman addressed the various potential strengths and weaknesses of the claims asserted against Mehlman, the likelihood of recovery, and the funds available for recovery.  In mid-June 2019, the SLC and Mehlman reached a settlement-in-principle, subject to signing a definitive settlement agreement and Court approval.

### F.      Plaintiff's Settlement Discussions with the Stipulating Defendants

Between June and December 2019, Plaintiff's Counsel, counsel for the Stipulating Defendants, and counsel for Defendants' Insurers, engaged in extensive discussions concerning a potential global resolution of the Derivative Action.  During this time, in-person mediation sessions with two JAMS mediators occurred on separate occasions.  In September 2019, Plaintiff retained insurance coverage counsel to provide guidance in relation to the applicable insurance

policies, the terms of which are highly complex, and possible insurance coverage issues and defenses.

Following the in-person, all-day mediation session with JAMS mediator Lawrence W. Pollack, on November 8, 2019, Plaintiff's Counsel, counsel for the Stipulating Defendants, and counsel for the Defendants' Insurers engaged in frequent settlement discussions and the exchange of substantive information though Mr. Pollack[6] about the claims, defenses thereto, and insurance coverage matter.

On December 27, 2019, after months of extensive discussions, arm's-length negotiations, the exchange of detailed mediation briefs, participation in numerous in-person and telephonic mediation sessions with Mr. Pollack and Judge Epstein, and exchange of settlement proposals and counter-proposals, Plaintiff, HIT, the SLC and Stipulating Defendants reached an agreement-in-principle concerning the proposed Settlement of the Derivative Action.

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The proposed Settlement is in fact an excellent result, providing substantial economic benefits to HIT.  Pursuant to the Stipulation ¶ 3.1, HIT will receive the following consideration:

(1)    The Stipulating Defendants Monetary Settlement Amount consisting of the sum of $14,931,108.47, that the Stipulating Defendants will cause their Insurers to pay on behalf of the Stipulating Defendants to the Company;

(2)    The AR Stock Settlement Consideration consisting of 66,555 shares of Company common stock that the AR Entity Defendants shall tender to the Company;

---

[6] The Parties also engaged in an in-person, all-day mediation session with the Honorable James R. Epstein (retired) on September 11, 2019, which was preceded by the preparation and exchange of mediation papers and subsequent communications.

(3)     The Mehlman Monetary Settlement Amount consisting of the sum of $250,000 to be paid by Mehlman to the Company; and,

(4)     The Mehlman Stock Settlement Consideration consisting of 16,949 shares of Company common stock that Mehlman shall tender to the Company.

Further, as discussed *supra,* the proposed Settlement is the result of intense and lengthy arm's-length negotiations by informed and experienced counsel.  The proposed Settlement merits preliminary approval.[7]

### A.     The Standards for Preliminary Approval of a Derivative Settlement

Plaintiff filed the Derivative Action pursuant to Rule 23.1, which provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  The "general practice" in shareholder derivative suits is that the parties submit the settlement to the Court for its approval together with a request for a hearing on its propriety.  *See* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D § 1839, at 199 (2007).

In determining the standards applicable to approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions…are relevant by analogy."  *Id.* at 195.  *See also* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 22.110, at 476 (4th ed. 2002). ("The role of the courts and the criteria considered in

---

[7] There should be no delay in consideration of this Motion or entry of the Preliminary Approval Order because of the 11th hour filing of the Wollman Complaint. Delay—which will only harm HIT and its shareholders—is what Wollman is seeking with this latest in a series of acts calculated to extract an undeserved fee for doing nothing that was productive or helpful to the prosecution of the Settled Claims. The Parties are confident that Wollman's recent foray will be rejected by the Court and, thus, there is no reason to postpone the approval process while the proceedings relating to the Wollman Complaint play out.

evaluating the adequacy and fairness of a derivative settlement are substantially the same as in the class action.")

In order to grant preliminary approval, the Court "need only conclude that the settlement of the claims on the agreed upon terms is 'within the range of possible approval'." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110, 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995)). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies…and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

A finding of preliminary approval is therefore "at most a determination that there is what might be termed 'probable cause' to submit the [settlement] proposal to class members and to hold a full-scale hearing as to its fairness." *In re State Street Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 U.S. Dist. LEXIS 100971, at *14 (S.D.N.Y. Oct. 28, 2009) (*quoting In re Traffic Executive Assoc.*, 627 F.2d 631, 634 (2d Cir. 1980)). In the absence of fraud or collusion, courts "should be hesitant to substitute [their] own judgment for that of the parties who negotiated the settlement." *Clark v. Ecolab Inc.,* 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) (*citing In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)).

## B.    The Proposed Settlement Serves the Interests of HIT and Its Stockholders

The substantive factors that courts in this District consider when determining whether to grant approval of a proposed derivative action settlement all support a finding that this settlement merits preliminary approval.  Specifically, the proposed settlement merits approval by the Court because it "fairly and adequately serves the interests of the corporation on whose behalf the

14

derivative action was instituted." *See, In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *6 (S.D.N.Y. Sep. 6, 2006) (citations omitted).

As set forth in Paragraph 2.1 of the Stipulation, the Settlement provides that HIT will receive cash settlement payments aggregating $15,181,108.47, and an aggregate of 83,504 shares of Company common stock.[8] This substantial financial recovery represents over 20% of the Company's maximum recovery of damages exclusive of interest. Assuming Plaintiff could prevail (and collect) on all of his claims asserted on behalf of the Company in the Derivative Action and defeat Defendants' asserted defenses, including the applicability of the Mutual Release, the Company's maximum possible recovery of damages in the Derivative Action, exclusive of interest, is approximately $74.2 million. These damages consist of: the Company's payment of $26.7 million in allegedly improper cash asset management fees to the Advisor; the Company's payment of approximately $20.3 million in allegedly improper property management fees to the Property Managers; and $27.2 million in estimated damages resulting from the Company's allegedly improper payments of cash and stock consideration to the Advisor and Property Managers in connection with the restructuring of the property management arrangement pursuant to the Framework Agreement.[9]

By any measure, the recovery of over 20% of the maximum possible recovery of damages is an excellent result for a derivative case. *See Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir.

---

[8] The most recently published estimated net asset value of the Company's stock as of December 31, 2018 is $9.21 per share.

[9] Specifically, pursuant to the Framework Agreement: (i) the Company made a payment of $14.0 million to the Property Managers; (ii) the Company waived reimbursement of approximately $5.8 million in expenses owed by the Advisor; (iii) 524,956 shares of Class B Units in the Company's operating partnership held by the Advisor (which Plaintiff contends were worthless) were converted to 524,956 shares of Company common stock; and (iv) the Company issued 279,329 shares of Company common stock to the Property Managers.

1983) (*quoting Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973) (Noting that derivative litigation is "notoriously difficult and unpredictable."))

Furthermore, the monetary and stock recovery are particularly favorable in light of the SLC Report finding that certain of the claims in the Derivative Action should not be pursued and dismissed, as discussed *supra*.  Certainly, that underscores what Plaintiff and Plaintiff's Counsel recognize and accounted for when negotiating the Settlement, which is that there are uncertain outcome and risks associated with litigation in general, especially in complex actions such as this Derivative Action, and Plaintiff would have had to survive Defendants' motions to dismiss.  Even if Plaintiff had survived Defendants' motions to dismiss, Plaintiff may have faced additional motions to dismiss, would have had to survive motions for summary judgment prior to trial, and, thereafter prevail at a trial on the merits of the Derivative Action to achieve a recovery for the Company, all the while facing the distinct possibility that, even if Plaintiff had prevailed, Plaintiff might well have secured less for the Company than the substantial payment of cash consideration and tender of HIT common stock provided by the Settlement.  Plaintiff maintains that the Company's prospect of immediate material monetary gain and receipt of the stock consideration is more desirable than the uncertain prospect of a greater recovery in the future.

Particularly here, Plaintiff is mindful of the cost to the Company of continued litigation. The Company's obligations to continue to indemnify Defendants and to advance their defense costs would continue throughout the litigation and would erode insurance proceeds available to satisfy any settlement or judgment in the future.  Defense costs for a protracted litigation could exceed remaining insurance proceeds which would leave the Company directly liable for them as a result of their indemnification obligations.

In addition, Plaintiff and Plaintiff's Counsel are particularly mindful of the obstacles presented by the Mutual Release, discussed *supra*.  Unless Plaintiff were successful in persuading the Court to void the Mutual Release, the Company's maximum recovery from the AR Entity Defendants would have been limited to damages resulting from compensation paid to the Advisor and Property Managers pursuant to the Framework Agreement, estimated at $27 million, exclusive of interest.  Any additional damages would have been collectible only from individual Defendants.

Plaintiff and Plaintiff's Counsel are also mindful that the Independent Director Defendants approved each of the challenged transactions, and that this fact presents an obstacle in establishing liability on the part of the AR Defendants.

### C.      The Proposed Settlement Is the Result of Intense, Lengthy, Arm's-Length Negotiations by Informed and Experienced Counsel

A strong presumption of fairness attaches to settlements negotiated during the course of litigation at arm's-length by experienced counsel.  *See, e.g., In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *Struogo ex rel. Brazilian Equity Fund, Inc., v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003);  *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *11-12 (S.D.N.Y. Dec. 23, 2009); *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *11 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations…")

The presumption of fairness and adequacy applies in this instance because the proposed Settlement was negotiated by experienced, fully-informed counsel after arm's-length negotiations. Plaintiff's Counsel has significant experience in derivative litigation and has negotiated substantial derivative settlements in the past, and, specifically, Plaintiff's Counsel has substantial experience litigating shareholder cases involving non-traded REITs such as HIT, and challenging related-

party transactions, both under federal securities laws and state laws.  Plaintiff's Counsel has achieved millions of dollars in recoveries for such REITs and their stockholders.[10]

Moreover, before Plaintiff reached an agreement-in-principle with the Stipulating Defendants, Plaintiff's Counsel thoroughly investigated the claims, conducted extensive legal research, consulted extensively with insurance coverage counsel retained by Plaintiff, and thoroughly assessed the merits of the claims and the risks of continued litigation.  On the basis of this investigation, and upon Plaintiff's Counsel's experience and expertise in this area, Plaintiff and Plaintiff's Counsel believe that the terms and conditions of the proposed Settlement are fair, reasonable and adequate, and in the best interests of the Company.

Likewise, the SLC's counsel who negotiated the terms of the settlement with Mehlman have substantial experience in complex commercial litigations of this type, including specific experience representing special litigation committees.   The SLC's counsel thoroughly assessed the Company's claims against Mehlman and obtained information from Mehlman's counsel including employment agreements and compensation-related information which allowed the SLC to fully analyze the reasonableness of settlement terms.  The SLC also considered the costs and

---

[10] *See, e.g., Gamburg, et al., v. Hines Real Estate Investment Trust, Inc., et al,* Case No. 24C16004496 (Cir. Ct. Baltimore City, MD)(Plaintiff's Counsel achieved a derivative settlement, approved in full on June 6, 2018, securing a cash payment representing a recovery of over 20% of the fees paid to affiliates); and, *In re Sanchez Energy Derivative Litigation*, C.A. No. 9132-VCG (Del. Ch.) (Chimicles Schwartz Kriner & Donaldson-Smith LLP, as co-lead counsel, secured a derivative settlement, approved on November 6, 2017 by the Delaware Court of Chancery, valued at more than $30 million).  Plaintiff's Counsel has substantial experience in litigating and settling cases involving non-traded REITs, like HIT, and real estate investment partnerships, in both derivative and class cases.  *See, e.g., CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 04-cv-1231 (U.S.D.C. M.D. Fla.); *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc., et al.*, Case 07 C 6174 (U.S.D.C. N.D. Ill); *In re Empire State Realty Trust, Inc. Investor Litig.*, Case 650607/2012, NY Supreme Court; *Wells and Piedmont Real Estate Investment Trust, Inc., Securities Litig.,* Case Nos. 1:07-cv-00862, 02660 (U.S.D.C. N.D. GA).

risks of litigation against Mehlman, the defenses available to Mehlman, the Company's potential obligations regarding indemnification and advancement of defense costs, and the potential disruption to the Company's business as a result of litigating against its current chief executive officer. Mehlman was represented by separate counsel; the negotiations were hard-fought and occurred over the period of approximately two months. The terms of the settlement reached between the SLC and Mehlman is therefore the product of arm's-length negotiation by experienced and informed counsel warranting a presumption of fairness and reasonableness.

### D.    The Opinion of the SLC and Company

The SLC and Company fully support the proposed Settlement. The SLC and Company expressed their view that compelling business justifications exist for the proposed Settlement, including that the Settlement provides for a meaningful financial recovery for the Company. The SLC and Company believe that the proposed Settlement is in the best interests of HIT and its stockholders.

### E.    Plaintiff and Plaintiff's Counsel Will Make a Petition for a Reasonable Fee Award

Plaintiff and Plaintiff's Counsel will file an application for a fee and expense award with the Court ("Fee Application") consisting of: attorneys' fees to compensate Plaintiff's Counsel for their services in connection with achieving the Settlement described in the Stipulation; (ii) a case contribution award in the amount of $2,500 to Plaintiff for Plaintiff's efforts incurred in bringing the Derivative Action; and (iii) an award of litigation expenses incurred by Plaintiff's Counsel in this action. The Proposed Fee Award will be in the aggregate amount of $2,250,000.

After reaching the settlement-in-principle with the Stipulating Defendants, Plaintiff's Counsel then negotiated the Proposed Fee Award with the SLC and the Company. Those arm's-length negotiations occurred over the course of several days with the assistance of Mr. Pollack.

The Company and SLC believe that the Proposed Fee Award is fair, proper, and reasonable. (Stipulation, ¶ 5.2.)[11]   The SLC and Company acknowledge that Plaintiff's and Plaintiff's Counsel's July 2017 Demand and December 2017 Demand, and the filing, prosecution and Settlement of the Derivative Action conferred a substantial benefit on the Company. *Id.*

## IV.    THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

If the Court grants preliminary approval, HIT will notify current HIT stockholders pursuant to the Preliminary Approval Order of the Settlement by: (1) issuing a Form 8-K enclosing the full Notice of Settlement of Stockholder Derivative Litigation ("Notice") and the Stipulation; (2) posting the Notice and copy of the Stipulation on its website; and (3) arranging for publication of a summary notice ("Summary Notice") once in *Business Wire.*

The Notice and Summary Notice are Exhibits C and D to the Stipulation. The Form 8-K and publication notice will advise HIT stockholders of the essential terms of the Settlement and information regarding Plaintiff and Plaintiff's Counsel's Fee Application, in accordance with Local Civil Rule 23.1.  It also will set forth the procedure for objecting to the Settlement or to the Fee Application, and will provide specific details as to the date, time and place of the Settlement Hearing.

Use of a Form 8-K to advise stockholders of the terms of a proposed settlement, together with publication notice, has been approved by courts as adequate and sufficient in derivative cases to satisfy the requirements of Rule 23.1 and due process.  *See, e.g. In re Rambus Inc. Derivative*

---

[11]  Plaintiff will support the application for the Proposed Fee Award under both the lodestar/multiplier method and the percentage of fund method in Plaintiff's Fee Application. *See Melito v. Am. Eagle Outfitters, Inc.,* No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343, at *44-45 (S.D.N.Y. Sep. 8, 2017) (recognizing that "although courts award attorneys' fees under either the lodestar method or the percentage-of-the-fund method, the trend in this Circuit is toward the percentage method" and using the lodestar method as a cross-check).

*Litig.,* 2009 U.S. Dist LEXIS 131845, at *7 (N.D. Cal. Jan. 20, 2009)*,* (discussing notice by Form 8-K, Business Wire press release and publication on the company website); *In re Metro Life. Derivative Litig.*, 935 F. Supp. 286, 294 n. 10 (S.D.N.Y. 1996) (approving publication notice of derivative settlement); *Witchko v. Schorsch,* No. 1:15-cv06043-AKH, Order Preliminarily Approving Derivative Settlement and Providing for Notice, Dkt. # 288, at ¶ 4 (S.D.N.Y. October 4, 2019) (approving method of settlement notice to stockholders in a derivative action whereby nominal defendant company must issue Form 8-K, issue press release, post notice on company's investor relations webpage, and publish notice once in *Investors Business Daily*); *In re Comverse Tech., Inc. Derivative Litig.*, 06 Civ. 1849, slip op. at 3 (E.D.N.Y. Apr. 2, 2010); *In re Marvell Tech. Group Ltd. Derivative Litig*., No. C-06-3894-RMW, slip op. at 2 (N.D. Cal. May 21, 2009); *City of Pontiac Gen. Emps' Ret. Sys. v. Langone, derivatively on behalf of The Home Depot, Inc.*, 2006 Civ. 122302, slip op. at 4 (Ga. Super. Ct. June 10, 2008).

## V.      PROPOSED SCHEDULE OF EVENTS

Finally, in connection with the preliminary approval of the Settlement, the parties request that the Court establish certain relevant deadlines.  Specifically, the parties propose the following schedule, as reflected in the proposed Preliminary Approval Order (Exhibit A to the Stipulation):

| Event | Deadline |
|---|---|
| File the Notice and Stipulation with the SEC as an exhibit to Form 8-K | Within fifteen (15) calendar days after the entry of the Preliminary Approval Order |
| Post the Notice and Stipulation on the Investor Relations portion of HIT's website | Within fifteen (15) calendar days after the entry of the Preliminary Approval Order |
| Publish once the Summary Notice on *Business Wire* | Within twenty (20) calendar days after the entry of the Preliminary Approval Order |
| Deadline for Plaintiff to file papers with the Court in support of final approval of the Settlement and | At least thirty (30) calendar days prior to the Settlement Hearing |

| in support of Proposed Fee Award (which will include a declaration or affidavit from the Company that the Notice has been made and Summary Notice published in accordance with the Stipulation) | |
|---|---|
| Deadline for Current HIT Stockholders to object to the Settlement | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for Plaintiff to file and serve their reply papers in support of final approval and response to any objection | At least seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately ninety (90) calendar days after the entry of the Preliminary Approval Order |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Notice and enter the Preliminary Approval Order (Exhibit A to the Stipulation).

DATED:  February 3, 2020

By:     /s/ Kimberly M. Donaldson-Smith
Nicholas E. Chimicles (admitted *pro hac vice*)
Kimberly M. Donaldson Smith (admitted *pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

Paul D. Malmfeldt (admitted *pro hac vice*)
**BLAU & MALMFELDT**
566 W. Adams St., Suite 600
Chicago, IL 60661
Telephone: (312) 443-1600
Fax: (312) 443-16665

***Attorneys for Plaintiff***

23

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that on February 3, 2020, I caused a true and correct copy of Plaintiff's Motion and Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement and Approval of Shareholder Notice to be electronically filed with the Clerk of the District Court using the CM/ECF System, which sent notification of such filing to all Counsel of Record.

DATED: February 3, 2020

By:     */s/    Kimberly M. Donaldson-Smith*
        Kimberly M. Donaldson-Smith