USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/19/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

TOM MILLIKEN, derivatively on behalf of
HOSPITALITY INVESTORS TRUST, INC.,

                  Plaintiff,

-against-

AMERICAN REALTY CAPITAL HOSPITALITY
ADVISORS, LLC, AMERICAN REALTY
CAPITAL HOSPITALITY PROPERTIES, LLC,
AMERICAN REALTY CAPITAL HOSPITALITY
GRACE PORTFOLIO, LLC, AR CAPITAL, LLC,
AR GLOBAL INVESTMENTS, LLC, NICHOLAS
A. SCHORSCH, WILLIAM M. KAHANE, PETER
M. BUDKO, EDWARD M. WEIL, BRIAN S.
BLOCK, JONATHAN P. MEHLMAN, EDWARD T.
HOGANSON, STANLEY R. PERLA, ABBY M.
WENZEL, AND ROBERT H. BURNS,

                  Defendants,
            -and-

HOSPITALITY INVESTORS TRUST, INC.,

                  Nominal Defendant.

No. 18-cv-1757 (VEC)

FINAL ORDER AND
JUDGMENT

------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       This matter came before the Court for hearing on June 9, 2020 ("Settlement Hearing") pursuant to the Preliminary Approval Order entered on February 5, 2020 ("Order") on the: (i) application of the Parties for final approval of the settlement ("Settlement") set forth in the Stipulation and Agreement of Settlement, Compromise, and Release dated February 3, 2020 ("Stipulation"), and (ii) Plaintiff's application for a fee and expenses award ("Fee Application"). Due and adequate notice having been given to current stockholders of Hospitality Investors Trust, Inc. ("HIT" or "Company"), as required in the Order, and the Court having considered all

relevant papers and proceedings and otherwise being fully informed and good cause appearing, the Court approves the Stipulation and Settlement. Fed. R. Civ. P. 23.1.

To approve the Settlement, the Court must find that it "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted." *In re AOL Time Warner S'holder Derivative Litig.*, No. 02-CV-6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (quotation omitted); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). To assess a settlement's procedural fairness, courts examine plaintiffs' counsel's experience and ability, whether the settlement resulted from arms-length negotiations, and whether the parties engaged in the necessary discovery to ensure effective representation. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A settlement's substantive fairness depends on the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial, the likelihood of success in light of the risks posed by continued litigation, the likely duration and cost of continued litigation, and any shareholder objections to the settlement. *Detroit v. Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974).

As the result of adversarial, arms-length negotiations with the benefit of factual findings and recommendations from a thorough independent investigation, the Court finds that the Settlement is procedurally fair. Plaintiff filed this action in early 2018 after sending two demand letters to the Hospitality Investors Trust, Inc. ("HIT") Board of Directors. The Court stayed this action over Plaintiff's opposition on August 7, 2018, until a Special Litigation Committee ("SLC") formed by the Board could investigate Plaintiff's claims (as well as claims raised in a demand letter by another shareholder, Dr. Stuart Wollman).[1] The SLC announced on April 16,

---

[1] The SLC's report notes that "Dr. Wollman's demand letter raises issues similar to those asserted in the Milliken Action." Report (Dkt. 119) at 14–15. Two years after making his demand, Wollman filed a lawsuit in this district alleging direct claims of common law fraud based on the SLC's findings. *Wollman v. Hosp. Inv'rs Tr., Inc.*, No. 20-CV-798 (VEC) (S.D.N.Y.). On June 18, 2020, this Court dismissed Wollman's complaint with prejudice because it failed to state a claim. Op. & Order (Dkt. 46).

2019, that it had determined that some, but not all, claims have merit and should be pursued.[2] The SLC also issued a 147-page report on October 11, 2019, supporting its conclusions. Between June 2019 and February 2020, Plaintiff's counsel, HIT, the SLC and its counsel, Defendants' counsel, and Defendants' insurers' counsel, negotiated a resolution of Plaintiff's derivative claims and the claims the SLC determined HIT should pursue.  Plaintiff's and SLC's counsel have extensive litigation experience with complex commercial litigation, including derivative suits, and the Parties participated in arms-length mediations with neutral and experienced mediators.  The compromise reached, although not informed by discovery in this action, was largely driven by the SLC's determination that certain claims should go forward.

       The Settlement is also a substantively fair outcome for HIT and its shareholders.  The consideration totaling $15 million represents a 20% recovery on the maximum estimated potential recovery ($73.5 million), a strong result.  The SLC's report made numerous factual findings that surfaced which derivative claims have merit and which will face significant litigation risk.  Those risks include a mutual waiver and release from March 31, 2017, and overcoming the business judgment rule for various challenged Board decisions that the SLC found were made in good faith.  Complex insurance coverage issues also pose material risks and limits on the potential recovery, and that coverage would likely erode as the lawsuit moved forward reducing the chance of a higher recovery.  Moreover, an indemnity provision ensures that Defendants can shift their litigation costs to HIT.  Should this lawsuit continue, it would without a doubt be a long and costly battle towards an uncertain outcome.  The Settlement reflects these realities in its ultimate valuation of Plaintiff's derivative claims.

---

[2]     Accordingly, the SLC filed a partial motion to dismiss in this action on December 20, 2019.

Two shareholders have filed objections to the Settlement: Dr. Stuart Wollman, represented by counsel, and Miriam Saul, appearing *pro se*. Wollman also appeared at the Settlement Hearing on June 9, 2020. Their objections are overruled. First, the fact that only two shareholders have objected to the Settlement itself favors approval. *See Strougo v. Bassinni*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("It has been repeatedly held that one indication of the fairness of a settlement is the lack of or small number of objectors." (quotation omitted)). Second, their objections have no merit.

Wollman objects on several grounds to the Settlement's procedural and substantive fairness. He first argues that his exclusion from the settlement negotiations shows that the Parties engineered a "reverse-auction." The Court disagrees. There are many benign explanations for his exclusion. He did not file a lawsuit until after negotiations concluded, he was not a necessary party to the negotiations, and he did not have a right to participate. Wollman also objects that the Settlement releases his direct claims without satisfying the requirements of Rule 23.[3] The Stipulation and Settlement releases claims relating to "the allegations in the Derivative Action, July 2017 Demand, December 2017 Demand, the Wollman Demand Letter and the allegations and findings in the SLC Report." Those allegations and findings cover derivative, not direct, claims. The Parties also represented at the Settlement Hearing that the Settlement does not release direct claims. Thus, to the extent he has viable direct claims, the Settlement has no effect on them.

Wollman primarily objects that the Parties have overstated the risks and underestimated the potential maximum recovery. According to Wollman, the maximum potential recovery is

---

[3] Saul similarly objects to releasing her direct claims; but the allegations made in her objection raise derivative, not direct claims. Her objection that the Settlement does not account for claims based on conflicts of interest—that were disclosed to prospective investors—also has no merit.

$143 million, considering certain forfeitures and excessive fees HIT incurred after suffering a liquidity crisis allegedly induced by Defendants while it was acquiring certain hotels.  The maximum recovery is even as high as $316 million, according to Wollman, if one adds other alleged overpayments for hotel properties.  The Court agrees with the Parties that Wollman's analysis is far too optimistic and ignores the significant hurdles from the findings of the SLC's report.  In any event, even a 5% or 10% recovery on the maximum possible recovery represents an adequate outcome for HIT and its shareholders considering the costs of litigation avoided and the strengths and risks of HIT's claims.[4]

      Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Final Order and Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms contained herein shall have the same meanings as set forth in the Stipulation unless otherwise defined herein.

2. This Court has jurisdiction over the subject matter of the Derivative Action, and all matters relating to the Settlement of the Derivative Action, as well as personal jurisdiction over all Parties.

3. The Court finds that the notice of the Settlement given to current HIT stockholders, in the form of (i) the Company's filing of a Form 8-K with the Securities and Exchange Commission ("SEC") disclosing the proposed Settlement and including the Notice of Settlement of Stockholder Derivative Litigation ("Notice") as an exhibit, (ii) the Company's posting of the Notice on the Investor Relations portion of the Company's website, and (iii) the Company's publication of the Summary Notice via the Business Wire, was the best notice practicable under the circumstances and fully satisfied the

---

[4] To the extent the Court does not discuss Wollman's or Saul's other objections, it found them meritless.

requirements of Federal Rule of Civil Procedure 23.1 and the requirements of due process.

4. Based on the record in the Derivative Action, each of the provisions of Federal Rule of Civil Procedure 23.1 has been satisfied and the Derivative Action has been properly maintained according to the provisions of Rule 23.1.

5. The Court finds that the Stipulation and Settlement are fair, reasonable, and adequate as to each of the Parties, and hereby finally approves the Stipulation and Settlement in all respects, and orders the Parties to perform the terms of the Settlement set forth in the Stipulation to the extent the Parties have not already done so.

6. This Final Order and Judgment, the facts and terms of the Stipulation, including any exhibits attached thereto, all proceedings in connection with the Settlement, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, shall not be deemed or construed as a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Derivative Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Derivative Action or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement; provided, however, that the Released Persons may refer to the Settlement, the Stipulation, and the Final Order and Judgment, and may file the Stipulation and/or this Final Order and Judgment, in any action to effectuate the liability protections granted them thereunder, including, without limitation, to support a defense or claim based on principles of res judicata, collateral estoppel, full faith and credit, release, standing, good faith settlement, judgment bar or reduction or any

other theory of claim preclusion or issue preclusion or similar defense or claim under U.S. federal or state law or foreign law.

7. This Final Order and Judgment is binding on the Parties and Released Persons, as well as their successors and assigns, and shall have preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of the Parties or HIT stockholders.

8. The Derivative Action, all claims contained therein, and any other Settled Claims, are hereby ordered as fully, finally, and forever compromised, settled, released, discharged, and dismissed on the merits and with prejudice as to all Defendants by virtue of the proceedings herein and this Final Order and Judgment. The Parties shall bear their own fees, costs and/or expenses except as provided in Paragraph 13 herein and as otherwise provided in the Stipulation or Order.

9. Upon the Effective Date, the Releasing Persons shall be deemed to have, and by operation of this Final Order and Judgment shall: (i) have, fully, finally, and forever released, relinquished, and discharged the Released Persons from the Settled Claims; (ii) have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the foregoing release; and (iii) as to the Settled Claims, the Releasing Persons expressly waive any protections afforded by California Civil Code Section 1542 and any and all provisions, rights, and benefits conferred by any U.S. federal law or any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent in effect to California Civil Code Section 1542, as provided for in Paragraph 3.2 of the Stipulation.

10. Upon the Effective Date, the Defendants and the Released Persons shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Releasing Persons, the other Released Persons, and the other Defendants from all claims, debts, demands, rights, or causes of action or liabilities, whether known or unknown, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Derivative Action or the Settled Claims, the investigation conducted by or on behalf of the SLC, and the preparation, dissemination and filing of the SLC Report, provided however that except as set forth in Paragraph 3.3 of the Stipulation this provision in no way limits any right to advancement and/or indemnification under any applicable agreement or applicable law that may be available to the Released Persons and Defendants.

11. Nothing set forth herein will in any way invalidate, impair, restrict, or modify the validity or scope of the Mutual Waiver and Release dated March 31, 2017, entered into by the Company and certain of the AR Defendants, among others.

12. Nothing set forth herein will in any way impair or restrict the rights of the Releasing Persons or Released Persons to enforce the terms of the Stipulation, the Preliminary Approval Order, this Final Order and Judgment and/or the Fee Award.

13. The Court approves an award in the amount of $2,250,000 ("Court-Approved Fee Award") consisting of: (i) attorneys' fees to compensate Plaintiff's Counsel for their services in connection with achieving the Settlement described in this Stipulation, which the SLC and Company acknowledged conferred a substantial benefit on the Company; (ii) a case contribution award in the amount of $2,500 to Plaintiff for Plaintiff's efforts incurred in bringing the Derivative Action; and (iii) reimbursement of reasonable

litigation expenses incurred by Plaintiff's Counsel in this action. The Court-Approved Fee Award shall be paid to Plaintiff's Counsel in accordance with the Stipulation and Plaintiff's Counsel shall pay $2,500 from such amount to the Plaintiff.

14. No proceedings or Court order with respect to the award of attorneys' fees, costs, and/or expenses to Plaintiff's Counsel shall in any way disturb or affect this Final Order and Judgment (including precluding the Order and Judgment from becoming Final or otherwise being entitled to preclusive effect), and any such proceedings or Court order shall be considered separate from this Final Order and Judgment.

15. Without affecting the finality of this Final Order and Judgment in any way, this Court hereby retains continuing jurisdiction over the Derivative Action and the parties to the Stipulation to enter any further orders as may be necessary to effectuate the Stipulation, the Settlement provided for therein, and the provisions of this Final Order and Judgment.

16. This Final Order and Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

**Date:  June 19, 2020**  
**New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**